Good afternoon, your honors. May it please this court. My name is Stacey Newman and I represent the appellant Mr. William Castillo. I'd like to reserve six minutes for rebuttal and I'll keep an eye on my time. All right, counsel. Although Mr. Castillo faces the most severe sentence there is, death, no court has reviewed the majority of his claims on the merits due to the district court's erroneous dismissal of his claims as untimely and procedurally defaulted. The court did so for over 20 claims. Today I'd like to start with discussing why a remand is necessary for the district court to address these claims in the first instance. First by discussing the timeliness issues and then the district court's errors under Martinez v. Ryan. Then time permitting, I'd like to touch upon the certified ineffective assistance of trial counsel claim. Unless the court would prefer to start elsewhere beginning with those timeliness issues and specifically equitable tolling. Counsel, you said that no court has reviewed the claims on the merits. Would you be amenable to this court addressing the claims on the merits? So your honor, in the cases where this court has found Martinez error, in all of those cases the court has remanded for the district court to consider those claims in the first instance. After first assessing whether the claims are with or without, wholly without merit is the language that Claiborne uses. So is it your argument that we do not have the authority to address the claims on the merits? No your honor, that's not our argument. Just that it seems to be the pattern and practice of this court when finding Martinez error, that the district court is given the first opportunity to do that first pass of the claims on the merits where it has not yet occurred. Understood. Your honor, in turning to equitable tolling, one of the arguments Mr. Castillo made regarding his untimely amended petition was that he was entitled to conflict-free counsel to pursue claims of egregious attorney misconduct, warranting equitable tolling. Mr. Castillo advanced this argument in the opposition to the state's motion to dismiss. He raised it in an evidentiary hearing motion. He also raised it in 59E briefing before the district court. The district court addressed only the first attempt to raise this argument and held that it would not appoint conflict-free counsel because counsel for Mr. Castillo did not adequately explain their own egregious misconduct. That is contrary to United States Supreme Court authority in Christensen v. Roper. And Christensen v. Roper has two holdings that I think are important here. The first is that- Can I ask you something about, I just want to make sure I understand. On this equitable tolling issue, Mr. Castillo and his counsel had argued, had at least four months after mail was decided before the expiration of the EDPA statute of limitations in the case. What evidence is there that Mr. Castillo acted diligently during that period of time? Your Honor, the court has never reached the question of diligence. And the reason why conflict-free counsel being appointed is important is that diligence can only be assessed in light of what the unreasonable circumstances were. Here, the district court never got there because it denied conflict-free counsel, finding that counsel did not explain those extraordinary circumstances. But if conflict-free counsel were to be appointed, that counsel could develop these facts, establish what the extraordinary circumstances are, and then Mr. Castillo's diligence would be assessed in light of those extraordinary circumstances. I see. All right. Thank you. And that's also in line with this court's authority in Spitzen v. Moore. There, the district court, or sorry, there, this court found equitable tolling was warranted but then remanded to the district court on the question of diligence because the record was not clear. And here, the record is also not clear. And going back to the two holdings that I think are really key from Christensen v. Roper, the first is that requests for conflict counsel in capital cases are to be judged under an interest of justice standard. And that stems from three factors from the court's early authority in Martel v. Clair, and that is the timeliness of the motion, the adequacy of the district court's inquiry into the conflict and the nature of the conflict. Here, the district court did not assess any of those factors. Again, it just faulted Mr. Castillo's counsel for failing to establish the egregious facts that would give rise to the tolling. The second important holding from Christensen v. Roper is related to that. It held that counsel cannot be expected to advance their own claims of egregious misconduct when a petitioner is doing equitable tolling on that ground. And the court pointed out that it necessarily forces counsel to denigrate their own professional performance, which counsel cannot be expected to do. So, Your Honors, we submit under straightforward application of Christensen v. Roper, this case should be remanded for appointment of conflict-free counsel to pursue these claims of equitable tolling. I think in comparing the cases, too, there's a couple key points to draw out. One is that Mr. Castillo raised this argument far earlier than the petitioner did in Christensen v. Roper. In that case, this issue didn't come up until seven years after Mr. Christensen failed before the Eighth Circuit and when he had an execution date already scheduled. So the timeliness of the motion here establishes that Mr. Castillo did raise this at the earliest opportunity and continued to raise this. And any concern that this court may have that this might drag on proceedings unnecessarily, as the Christensen court pointed out, you know, it considered this and it rejected it, finding that the outside counsel was only asking for 90 days. And in the case that Mr. Castillo cited, too, where a Nevada district court did appoint conflict-free counsel to investigate equitable tolling, that only took 120 days. So this idea that this might drag on things for years and years is just not supported by Christensen or this other district court who has done just what we are asking. So again, Mr. Castillo asked this court to apply Christensen v. Roper and remanded the district court with instructions to appoint conflict-free counsel to pursue these claims. If there's no other questions on that timeliness argument, I thought I'd get to relation back. Can you address the IAC psychological defense argument? I guess I'm struggling to find out why that wasn't just a strategic decision by the attorney and why you think that this was an effective assistance of counsel. So there's a couple answers to that, Your Honor, depending on whether we're looking at the Nevada Supreme Court adjudicated version of the claim, which is a much smaller universe, or the fundamentally altered version of the claim. In the pared-down Nevada Supreme Court adjudicated version of this claim, we're arguing that trial counsel was ineffective for failing to apprehend that the Dr. Etkoff report it had well before trial did support a basis for arguing a second-degree murder, essentially. Well, but that was a decision that was made by the attorney that, based on their judgment, that was not going to be effective. Why was that wrong? Why is it ineffective for them to make a decision, a tactical decision, not to present that evidence or that defense? Yeah, a couple points, Your Honor. Strickland does not allow the courts to just simply credit trial counsel's testimony. It needs to depend on the totality of circumstances. And I think an analogy to Rompia v. Beard is appropriate. Granted, that was IAC at penalty phase, but what the Supreme Court held was that it was not enough that trial counsel just looked at a file and didn't think anything was there. The Supreme Court didn't stop there and say, okay, well, that was strategic, so we're not going any further. The court looked at the totality of circumstances and found that reasonable counsel reading that file would have realized that it should lead to more investigation, more leads, things like that. Similarly here, just to credit trial counsel's conclusion that it wasn't helpful without more is not what Strickland's test. Strickland looks at everything. And reasonably effective counsel in reading Dr. Etkoff's report would have realized that there are references in there to support a guilt-based offense. This is even more key in a case where there was no defense presented whatsoever. This was not a case where one defense was strategically chosen over another. This is a case where no defense was chosen. And then in turning to the prejudice prong, I think it's important to note that the jury found this exact same evidence from Dr. Etkoff in the penalty phase. They found that this established a mitigating circumstance that Mr. Castillo committed the offense under extreme emotional disturbance, emotional or mental disturbance. So, your honors, we believe that that is kind of the heart of both versions of the ineffective assistance of trial counsel claim. If we were to address the merits, just going back to Judge Rawlinson's questions, which one, I know you present a lot of claims, which one do you think is your strongest one? And a related one, I mean, is there a reason, I know traditional practice is to remand it to the district court. Are there some advantages? I mean, obviously, the district court probably is more familiar with the record, but is there, other than kind of tradition, a compelling reason for the district court to address the merits of these claims? Yes, your honor. This court's jurisprudence is replete with the idea that district courts are better suited to address claims in the first instance, just in general. And in here, you know, the petitioner was constrained by page limits on appeal. On remand, there could be more fulsome briefing. And I'd also point out that the related Shin versus Ramirez claims could also be briefed on remand. On appeal, we have the state raising Ramirez in the context of a couple pieces of evidence, but we really don't have the kind of detailed briefing detailing, you know, which claims does it believe are subject to Ramirez, which claims rely on just evidence from the first post-conviction proceeding. So, a remand would allow the district court to consider the Martinez claims, the Ramirez arguments, assess whether dividend entry hearing is warranted, all these things. Which one do you think are the strongest ones for you? Because some of them, I'm looking, there are a lot, and you know, frankly, a lot of them seem fairly weak. There may be some that have more substance. I'm trying to see which one you think has more substance. Yes, and I apologize I didn't answer that when you asked it before. Claim 2A, the ineffective assistance of trial counsel in failing to develop and present all the mitigating evidence that was available. So, counsel, specifically, what mitigating evidence do you think would have made a difference in the outcome? Yes, so when you look at what was presented to Mr. Castillo's jury. During the sentencing phase? Yes, during the sentencing phase. When you look at what was presented before Mr. Castillo's jury, there was only four witnesses, they barely scratched the surface of his life, and there was limited testimony from Dr. Etkoff, who notably did not complete neuropsychological testing, even though trial counsel got funding for him to do so. But had trial counsel investigated all the available mitigating evidence, which was readily available, given Mr. Castillo's extensive history in both the juvenile justice system and foster care, there was thousands of pages of records out there for counsel to access. And had counsel looked at those records, it would have found extensive detail of Mr. Castillo's truly abhorrent childhood. He had been shuttled around to foster care, to juvenile facilities. At his trial phase, there was testimony that, you know, his mother tried her best, but was a caring mother. However, those foster care records indicated quite the contrary. They indicated that his mother was checked out, was not interested in parenting him, and would routinely leave him whenever things got, you know, a little inconvenient. Do you think those mitigating circumstances would have outweighed the aggravating circumstances? Yes, Your Honor, I think it's also important to note that two of the aggravators have since been struck under Nevada Supreme Court authority in McConnell v. State. So given the two remaining aggravating circumstances and this wealth of mitigating evidence, again, I go back to Rompilla v. Beard. In that case, the United States Supreme Court acknowledged the aggravating circumstances, but found that all of this knowledge of this truly nightmarish childhood could have prompted at least one juror to vote for a sentence of less than death. And I can continue more about the mitigating evidence that trial counsel should have uncovered. No, I'm satisfied.  If I could, just to get back to the uncertified relation back argument, I just wanted to point out that although if this court is inclined to remand on the conflict-free counsel to pursue equitable tolling argument, that would cover all of Mr. Castillo's defaulted claims. If the court were not inclined to do that, I did want to have the opportunity to argue that a smaller universe of claims relate back under this court's authority in Ross v. Williams. Ross v. Williams issued after Mr. Castillo had filed his notice of appeal, and it was subject of a limited remand before the district court. Upon that limited remand, the district court declined to find that any additional claims related back due to an erroneous application of Ross. The district court erred because it was looking for a match between the legal claim of an amended petition and the legal claim in the original petition. Indeed, the court's language repeatedly refers to the fact that there was not a claim raised in the original petition that matched. But what Ross v. Williams made clear is that the key question is whether there is a common core of operative fact. And Ross also made clear that those facts need not be in the four corners of the petition, and that those facts can be found in any written instruments attached to the petition, like briefs and orders. So if the district court were to have applied the proper test under Ross, we submit that seven additional claims would have related back. And that was Claim 1-2A, which is the ineffective assistance at the penalty phase claim that we were just discussing. Claim 1-2B, the ineffective assistance of counsel to objective vouching. There are three jury instruction errors that trial counsel was ineffective in litigating. And then Claims 4 and 5, which concerned improper juvenile evidence and trial counsel's failure to keep that out. We ask that this court certify this issue and with the benefit of supplemental briefing and argument from the state, hold that under the proper application of Ross v. Williams, these seven claims relate back. How do you, on the Martinez issue, how do you respond to the state's argument that the Nevada statutory scheme falls outside the concerns addressed in Martinez? How do you respond to that argument? Yes, Your Honor, a few responses. I just start off by saying that Martinez established a very clear four-part test that this court and other courts have continued to rely upon since it issued. And none of those elements turn on whether this analog exists. And I think that's really demonstrated in this court's authority in Cooper v. Nevin. In that case, the court acknowledged that a petitioner could overcome a default in state court via prosecutorial misconduct, but it held that that did not prevent the petitioner from using that same basis to overcome a procedural default in federal court. So this idea that if an analog under state law exists, you all of a sudden don't get Martinez, I think is dispelled by Cooper v. Nevin. And that makes sense because this is all questions of federal law. And federal law, you apply your own rules and they do not depend on the state court procedure, at least for Martinez. And I was thinking about this more, and I think kind of what's going on is that the state is trying to graft a diligence requirement onto Martinez that does not exist. The Martinez test is a very straightforward four-part test. Mr. Casillo can meet that test. And he cited to numerous authority of this court applying that four-part test and subsequent district court decisions in Nevada that rejected the kind of reasoning that the district court used here. And again, our main argument is that the Martinez error, there was three Martinez errors the court committed. Two of them we believe were addressed by this court in Hogan v. Bean, which we filed a 28-J letter with this court flagging that decision. In that decision, the court found that two similar errors were reversible, and the court did remand for further consideration of those Martinez questions. And the two errors that Hogan found were reversible were that the district court erred by finding that NRS 34.726 could not be overcome via Martinez period, the court held that was error. And then the other error was that the district court could not require a quote-unquote nexus test, which a panel of this court found was more like a proximate-caused tort standard than a but-for legal causation. And so the Hogan court found that this was error and reverse on that basis, too. I think it's worth noting that the district court did go even one step further than the court did in Hogan, and it said, you know, as a basis of these other two assessments, I'm just going to find, as a matter of equity, that Martinez does not apply. But this, of course, is foreclosed by a United States Supreme Court precedent in Laushner v. Thomas, which reversed a lower court for making the same mistake, saying you can't just fashion your own freestanding tests of equity, you have to apply a binding precedent, the relevant statutes, and the relevant habeas corpus rules. So Your Honor, we submit that all of these errors warrant a Martinez remand in this case. All right. Thank you, counsel. I think I hit on everything I wanted to hit, but I don't want to sit down too prematurely if there's any more questions on the issues. No. It appears not. Okay. Thank you, Your Honor. I'll reserve the remaining of my time on rebuttal. Absolutely. We'll hear from the State. Good afternoon, and may it please the Court. My name is Heather Proctor. I'm a Chief Deputy with the Nevada Attorney General's Office. I have the honor of representing the respondents in this matter. As noted, there are four certified issues, and I would also like to start with the equitable tolling argument because the district court found that while there were many claims procedurally barred and that the petitioner could not satisfy Martinez, the court found that all but two of those claims were also untimely and did not relate back to the original federal habeas petition and that he could not satisfy equitable tolling. And so Castillo really must satisfy both equitable tolling and Martinez in order to prevail on this appeal. And for that reason, I'd like to start with the equitable tolling arguments. As far as counsel's performance, Christensen can be distinguished in this case. In Christensen, the attorneys did not contact their client until six weeks after the statute and limitations had expired. The court found that there was a significant conflict of interest where counsel's interest of avoiding damage of their own reputation was at odds with counsel's strongest argument that the attorneys abandoned him. The court did find that abandonment was not beside the point because the conflict of interest was so strong in that case. In addition, the court evaluated the district court's order declining to appoint new counsel, not temporary counsel, in order to strictly evaluate the equitable tolling argument. In this case, the petitioner does not demonstrate that their errors in this case, if there were any errors, are anything beyond garden variety negligence. As this court found in Doyle, which was a very similar case where the petitioner had actually waited three years after Mayall was decided to file their amended federal petition, albeit their statute of limitations had expired prior to Mayall versus Castillo where he still had four months, but he still waited three years to file his amended petition, the court found that counsel displayed garden variety neglect in the form of inattention to developments in the law governing the relation back, but not egregious misconduct. The petitioner just hasn't demonstrated any type of egregious misconduct. Their primary argument is that while Castillo still had four months left on his statute of limitations, but he doesn't demonstrate or cite any authority which states that because there was still time on the epoch clock, that because counsel did not file an amended petition within that four months after Mayall, that that is egregious misconduct. Why? If those four months go by, he doesn't have the right, he loses out based upon AEDPA. Why isn't that egregious? Your Honor, egregious misconduct is something similar to what was found in Christensen, where they completely abandoned their client. The other part of this is that in Christensen versus Roper, the attorneys at first said we miscalculated, this was our fault, but in subsequent proceedings, the attorneys came back and said, well, actually, no, we have legal and ethical reasons for overcoming these proceedings. That's where the court was finding the severe conflict of interest, and the court was finding that abandonment was not necessary because of the severe conflict, and where the court was found that the damage to the attorney's reputation was at risk because the attorneys had actually changed their position on this. In terms of why it is not egregious misconduct, there was still time to certainly to file proceedings, but the petitioner was continuing to conduct discovery. They did not file their discovery motion until several months after Mayall was decided. They simply chose to continue litigating this case, and they chose to further develop the case in federal court before even returning back to state court for their second state post-conviction proceedings. Egregious misconduct is severe misconduct. Well, that was a strategic decision? How could it be a strategic decision other than egregiously dumb? Your Honor, it could be just a miscalculation. It could be that they didn't realize that Castillo was one of those that actually still had time left on this at that clock. We don't know, but it simply does not reach the level of egregious misconduct that the other courts have found. Similarly, in Spitzen, that is also distinguishable because in that case, the court had actually stayed the proceedings in order for the case to go back for competency determinations. And the attorney was confused somewhat by that order. The court found that, yes, there was some demonstration that there were competency concerns. There was an order staying the proceedings. Unlike in this case, there was no order staying the proceedings. Mail was decided, and he knew at that time that the time was running. And he simply chose not to file the amended petition within that certain period of time. That may be a miscalculation of the statute of limitations, but it doesn't reach egregious misconduct warranting relief under Holland v. Florida. And your argument is that they need to satisfy both the tolling and the Martinez issues. Could you get to the Martinez issues? Certainly. Regarding the Martinez issues, there are two claims that were raised under Martinez that are not subject to the equitable tolling timeliness, if they are. The first is Claim 11, in which the petitioner argues that counsel failed to challenge the We briefed that issue as far as the state court case law actually supported what the district court did in this case. But more fundamentally, the only count on which a deadly weapon enhancement was found was the first degree murder conviction. And of course, the defendant was not sentenced under the deadly weapon enhancement. He was sentenced to death instead. So it really doesn't apply in this particular case, and it's not a substantial claim. The second claim is Claim 82A, in which they allege that the counsel failed to object to the victim's daughter's testimony, in which she talked about her mother's mental health as well as physical health. That particular case, that is, we can go straight to prejudice on that case, because the facts of this case were so egregious, so horrendous, that he brought a tire iron with him, even though he had a key. He was fumbling around in the room where this individual was sleeping and looking for something to steal. And when the co-defendant made a noise, he immediately started striking the victim with the fists and with the tire iron, and when she was starting to gurgle on her own blood, smother her to death. Those facts were so horrific that the statements by the victim's daughter regarding her mother's health and mental well-being simply were not going to make a difference in this case, and certainly were not going to lead to a second degree murder conviction. Those are the two Martinez claims that survive, that were not subject to the equitable tolling and the timeliness issues. As far as the Martinez claims themselves, it is our position that under Hogan, Hogan needs to be distinguished from this case. How? With Hogan, it addresses a time period well before the Castillo case, well before the Crump decision in 1997. And Hogan even went so far as to say, look, in order to satisfy Martinez, there must be some logical connection between first post-conviction counsel's ineffective assistance and the procedural default. The court found that based on Nevada law as it existed for Hogan, that even if second post-conviction counsel did raise the arguments, they could not argue ineffective assistance of first post-conviction counsel because they were not entitled to effective assistance at that time. And the court in the footnote noted, we do not make any kind of notation that this may not apply in cases where they actually do recognize Martinez's exception in state court proceedings. That goes into why the Martinez simply does not apply to death row inmates in Nevada. If the purpose of Martinez was quite clear. Martinez addressed the issue that in most courts, the courts would actually channel claims away from direct appeal if they were, excuse me, IAC claims, away from direct appeal where a petitioner was entitled to effective assistance at counsel. Counsel, I guess I, has any court ever said what you just said? That Martinez doesn't apply to death penalty cases? Or, I think that's what I heard you say. Yes, in Nevada, based on our statutory framework. That is correct. I'm not aware of any courts that have that similar framework for capital dependence. So, are you saying there's a Nevada case that says that Martinez doesn't apply to death penalty cases? No. And what case says that? Nevada has not, does not recognize Martinez in state law. Okay, so I don't understand your point that Martinez doesn't apply because it's a federal requirement. It is. The question is what test is to be applied or what standard is to be applied. Martinez addresses the state procedural framework and is entirely based on a state procedural framework. How does the state deal with ineffective assistance? But they require the counsel for their first post-conviction appeal to raise those issues. And if they don't raise all those issues, as allegedly they haven't, then wouldn't Martinez apply here? Not necessarily, Your Honor, because the main concern was if they do not have the right to effective assistance at counsel in those first post-conviction proceedings, then Martinez specifically states there is a possibility that the individual will never have their trial counsel claims addressed due to ineffective assistance of post-conviction counsel, and therefore they need a second bite at the apple. They need an opportunity to address these claims in case of ineffective assistance of post-conviction counsel. In Nevada, we have a statutory framework, and again, Martinez is based on state procedural law, that provides very similar protections. The question is, do they have a right to an attorney at the first post-conviction proceeding? Correct. And in Nevada, they do. They do. In Nevada, under Crump, so there is a statutory right to appointment of counsel for capital dependents, and we're strictly limiting this to capital dependents. And under Crump, they have a right to effective assistance of first post-conviction counsel. So they actually have a statutory right to effective assistance of counsel. So if they raise these arguments in a second state petition that is timely filed, they do have an opportunity to address whether first post-conviction counsel was ineffective, and if they succeed, can reach the merits of their trial counsel claims. Wasn't this issue addressed in Hogan v. Bean? Because that's for Nevada, and it was a death penalty too, right? It was a death penalty case. However, Hogan occurred before Crump was decided. All of the state proceedings occurred prior to Crump. So the petitioner did not have that right to effective assistance of counsel under Crump. And instead, Crump, as I mentioned, left open the question that if there is a Martinez exception recognized in state law, that may change our proceedings and our decision, because our law, if these claims are raised for the first time in a second post-conviction, post-conviction counsel in that second proceeding cannot challenge the effective assistance of first post-conviction counsel. Let's say we disagree with you on that. Not saying that we do, but let's just say that we do, and determine that Martinez defense was potentially available. What should the appropriate course of action be here? Your Honor, the court can certainly remand these proceedings. However, the court also has the ability to evaluate these claims under Martinez to determine if they are substantial, and also to determine if first post-conviction counsel was effective. Thank you. Counsel, so I'm looking at page 303 on Crump. Is that the language you're talking? Go ahead, if you wanted to get your... It says, we conclude that Crump was entitled to effective assistance of counsel for his October 26, 1986 petition for post-conviction relief. Is that the language you're relying upon? For Crump as far as effective assistance of counsel? Yes. Yes.  Nevada has adopted and has repeatedly reinforced the Crump determination that because there is a statutory right to appointment of counsel, there is a right to effective assistance of first post-conviction counsel in death penalty cases only. If those claims are raised in a second state petition and can be used as cause to overcome the state's statutory bars. Okay, so I understand what you just said, but I want to make sure that I... How does that relate to then your position that their argument fails here? I just want to make sure I understand that point. Their reliance is strongly on Hogan. The district court did make a determination that as a matter of equity that the petitioner waited 10 years after the direct appeal and 5 years after the first post-conviction proceeding in order to file their second state petition. The court further found that had the petitioner raised a timely second state habeas petition, he could have raised this first post-conviction proceeding argument. What do you say to the argument that the counsel raised, which is that's sort of a made-up, this equity argument is sort of a made-up factor that the district court judge considered and not necessarily... Your Honor, I respectfully disagree. I believe what the court was doing was referencing the equitable remedy that was available in Martinez, not creating a brand new test that was applied for the first time. So, counsel, if I understand your argument, it is that because the Nevada statutes provide for the right to counsel at the first post-conviction proceeding, the second counsel could have addressed the ineffective assistance of counsel at the first post-conviction proceeding. Therefore, Martinez is not triggered. Is that your argument? Let me state that a little differently. I think we're on the same page. Okay, because I'm trying to understand what your argument is. Under Crump, if in the second state habeas petition, which was subject to procedural bars, the counsel in the second state petition argued that first post-conviction counsel was ineffective for not raising these trial counsel claims, that can serve as cause to overcome the state procedural bars in Nevada. Right. So how does that relate to Martinez? So that's what I'm trying to get the connection. So you said, okay, this is how Nevada operates. Why does that preclude Martinez from being applied? Because Martinez is an equitable remedy. There's no constitutional right to first post-conviction counsel. And the way that it is applied, it is based on the state procedural framework. In Nevada, Nevada provides very similar protections. When you say very similar protections, to me that's kind of a hedge to say that we don't quite meet Martinez's requirements when we have something close. That's why I'm asking you to explain precisely why Martinez bars the claim. In both situations, counsel can use first ineffective assistance of post-conviction counsel as a basis to overcome the state procedural bars. Correct. So because of the Nevada framework, it allows the same protections that were envisioned in Martinez in order to get that second bite of the apple. In Nevada, for capital defendants, that second bite of the apple occurs in the state proceedings for death row inmates. Now, the question of cause and prejudice remains a question of federal law. But because of the state procedural framework, what would occur is petitioner would now have to satisfy the standard for cause and prejudice to overcome the bar based on Murray v. Carrier and Coleman v. Thompson because this equitable remedy available through Martinez would not be available because of this equivalent in state court. And under Coleman v. Thompson, ineffective assistance of first post-conviction counsel would not serve as cause. So essentially you're saying they should have had this opportunity in the state proceedings. They chose not to for whatever reason do that so they don't have the ability to use Martinez at this stage. Is that your position? It is. Okay, I just want to make sure I understand that. It is, Your Honor. Thank you. So here's the language in Martinez. It says where under state law claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if in the initial review collateral proceeding there was no counsel or counsel in that proceeding was ineffective. So tell me why this doesn't apply, this holding doesn't apply here. I'm not getting why. So, yeah, I'm not getting why. That language doesn't say, but if in the state proceeding they have this procedure, then they would not be eligible. So it doesn't say that in Martinez. And I understand that, Your Honor, and that is because this was not the situation addressed in Martinez. The same with Trevino. Neither of those cases are situations where there was actually the right to effective assistance of first post-conviction counsel as to serve as cause to overcome the state procedural bars. Okay. We understand your argument, counsel. Thank you. So if we disagree with you on that argument and we think that under Hogan the procedural bar does not prevent review on the merits, do you think it would be appropriate for us to decide the merits of the case? Your Honor, I do think it would be appropriate. It certainly could be remanded for further evaluation by the federal district court, but this court has the record before it and the parties briefed the issues, so the court could address the merits of the claims. I would agree with my colleague that in most circumstances the court has remanded. I thought usually on remand we would have the district court to determine whether or not the Martinez exception to the procedural bar was triggered. Is that usually what the remand was for, or was it for the merits? I have seen both circumstances. If the court finds that Martinez has been satisfied, then it has remanded for a merits determination. In fewer cases I have seen that it has been remanded for the initial determination of whether Martinez applies in the first place as to each claim. Again, I think this court is certainly able to address those issues. These issues, as noted earlier, some of these issues are not that complex. Can we assume Martinez has been satisfied and then just go into the merits, or do we actually have to analyze the Martinez issue? I think the court would have to determine if Martinez was met before it could address the merits of the issues. Why couldn't we assume and decide on the merits? Well, the court could certainly address whether the claims were substantial, and if the court assumes if the issues Martinez was satisfied, it could potentially determine that if we assume that Martinez is met, the claims are. I'm sorry, Your Honor. I'm trying to think under 2254. I know that there are prohibitions against granting relief, but I believe that's limited to exhaustion issues. So I'm trying to think of the permutations. We're not saying that. We were just asking you the question. At least I'm just asking you the question. I'm not saying that that's the proper procedure. I'm just asking. I think the court could certainly address whether the Martinez is satisfied. If it gets to the merits of the claims, I mean, the court can certainly do what it wishes, and it does have the record in front of it. This case has been around a long time, and I'm thinking if we send it back and then the parties are dissatisfied, it'll come back again, and that's going to be a time period. There is some interest in resolving this case in terms of finality. Of course, we want to give all of the process that is due, but it has been lingering for a long time. It has, Your Honor. In addressing the claim that Castillo's counsel addressed regarding mitigation evidence, if you look at the cases that were addressed by the U.S. Supreme Court in which the court has found ineffective assistance of counsel, those are situations in which the defense attorney presented a mitigation evidence that was very different from the evidence that was discovered during post-conviction proceedings. Here, the evidence that is presented in the matter of the declarations of the family members, of the doctor's reports, if the court deems that it can reach those claims through the Ramirez gateway, it simply is additional evidence similar to what was presented in the mitigation. Counsel mentioned that he had been in juvenile facilities, that he had been in and out of foster care, that the mother had no interest in parenting him. But all of that evidence was actually presented either through the mother or through Dr. Eckhoff. I remember reading that in the material that was presented.  Certainly, the two doctors that they have presented have a different diagnosis of PTSD, but the evidence, for the most part, was very similar. He presented mental health issues. He presented a whole cacophony of details regarding his upbringing, both through Dr. Eckhoff as well as the mother and one of the other witnesses. This is not the situation, such as Rumpia, where counsel discovered evidence that was never presented at all, that counsel made no attempt to present any of this evidence. The evidence in this case simply is not of the kind of caliber that would warrant relief because counsel did present an expert on defense and did present all of this information regarding the upbringing that counsel obtained both from juvenile reports as well as Castillo sharing information, and counsel found that the information Castillo shared- Is there argument that they didn't present, that it wasn't as detailed as it could have? I guess I'm trying to sort of put together the comments earlier, and you know the record better than I do. That is certainly how we have interpreted it, that it is not as detailed, that there were several additional episodes of issues with the upbringing, that there were certain events that happened while he was three or four, events that happened to the mother prior to Castillo's birth, as well as the expert reports. There is case law in this circuit, Fairbanks v. Ayers, that says if an expert does not diagnose the same issues than another expert, that's not ineffective assistance of counsel. That is simply that the doctor made a determination based on the evidence he's provided, and there's no evidence in the record that Dr. Etcoff requested additional information from counsel. Dr. Etcoff presented the majority of this evidence to the jury, and the jury rejected the evidence and ultimately determined that the death sentence was appropriate. Very briefly, the claim regarding that the Nevada Supreme Court rejected in addressing the guilt phase issue. The issue with that is Dr. Etcoff actually testified that there was no mental issues or any evidence that Castillo was unable to form the intent to kill. And more importantly, there was an abundance of evidence that Dr. Etcoff testified to in the penalty phase that would have been extremely detrimental to the defense, including a final quote, Mr. Castillo even today is a very dangerous individual who absolutely must be incarcerated so that society is protected from this basically uncontrolled and very angry man and stated that he should never be released from the streets. That kind of evidence was extremely detrimental and would have been subject to cross-examination had counsel put on Dr. Etcoff during the guilt phase. With that, is there further questions? It appears not. Thank you, counsel. Thank you. Rebuttal. I'm just going to hit a few points. With regard to the equitable tolling arguments my colleague was advancing, Christensen did not require an ongoing abandonment. In fact, the court in Christensen expressly rejected that complete abandonment or a disabling contract of interest was required. And also the state's comments that Christensen's counsel did assert they had a legal basis for missing the deadline. So here, too, Mr. Castillo's counsel said that based on the standard scheduling order, they also advanced a legal basis for missing the deadline. So really the cases are quite similar in that regard. As far as the Martinez arguments. Sorry, before I go to the equitable tolling argument, do you agree with your friend on the other side? She says that if there's no equitable tolling, there are only two claims left. Do you agree with that characterization? Not quite, just because I do agree that there are two Martinez claims that were found to be timely. Absolutely. I would also point out, though, that we have the additional relation back arguments if this court were not inclined to reverse on equitable tolling grounds. Thank you. And then as far as the Martinez arguments, you know, Judge Mendoza took the words right out of my mouth. Martinez could have required that it only applied in cases where counsel was not appointed pursuant to statute in the first instance. Martinez did not hold that. It set forth a very simple test, which Mr. Castillo can meet in this case. I want to ask you about the idea that should we address the merits of this case? Let's say we agree with you on the Martinez issue and therefore we would consider the merits. Given the facts in this case, I mean, I guess I'm trying to find your strongest arguments and that's why you think that you would be successful on the merits of this case. Yes, Your Honor. And again, going back to that ineffective assistance and mitigation counsel claim that we've been discussing, I know my colleague stated that much of the same evidence that was subsequently uncovered just reiterated topics that were covered at the penalty phase. But Wiggins and Rompillo made clear that a cursory mitigation presentation does not meet constitutional muster. Trial counsel has a duty to uncover all relevant mitigating evidence. And the fact that counsel presented some does not absolve it of ineffective assistance of counsel. What was missing? Because, again, as I mentioned to your friend on the other side, I had read the fact that those issues were presented at the mitigation stage. What additional, what was missing? What was not presented, I guess, is my question. Again, I want to point out the fact that there was testimony that Mr. Castillo's mother was just a good mom who was trying her best. The wealth of mitigating evidence that was subsequently uncovered revealed the extent of the neglect and deprivation that Mr. Castillo suffered. The amount of times he was dropped off in foster care. Also, one piece of evidence that trial counsel didn't uncover was from one of his foster families, Mary Knowles. She provided counsel with a declaration stating that when Mr. Castillo arrived at her home, he was wearing a girl's shirt that was cropped at the waist. He had pants with crotches ripped out. He didn't have shoes that fit. His toes were curling under. So this is the type of evidence that would have really altered the sentencing profile. Instead of the jury just walking away thinking, oh, okay, you know, some things happened, but this was a caring mother. That kind of evidence would have really altered the sentencing jury's conception of what Mr. Castillo's childhood really was like. And in addition, the expert evidence as well. Dr. Atkoff just conducted a personality test. The subsequent experts that we were able to uncover administered 28 tests, and they found a cognitive order not otherwise specified. They found complex PTSD both in childhood and persisting into adulthood. These kinds of things are what sentencing juries should be considering when they're considering a total picture of someone's life when deciding whether to sentence them to death. Here, Mr. Castillo's jury simply did not have all of these relevant pieces of information. And also, turning to a statement my colleague made that Dr. Atkoff did not request any additional information. On the face of his report, there are many areas where he notes that further interviews with family members would be helpful, and trial counsel made no effort to follow up on that. So I just wanted to correct the record on that one. And lastly, Your Honor, this idea that any evidence regarding the defense presentation at the guilt phase, any evidence from Dr. Atkoff would have been damaging. Again, this is not a case where defense counsel chose one defense over the other and made a strategic decision not to present one. Here, no guilt phase defense was presented. So it's hard to imagine what could have been worse or more damaging. This was the worst case scenario. Mr. Castillo was found guilty on all counts. So it doesn't really make sense to think that some defense presentation would have been damaging when no defense presentation existed. And with that, Your Honor, we would ask that if this court is not inclined to grant relief on the ineffective assistance of trial counsel claim, we would ask for a remand with instructions to the district court to appoint conflict-free counsel. And then after determining what claims are timely, to then move on to the Martinez analysis. And again, at that point, whether an evidentiary hearing is warranted could be briefed, and the district court could pass upon whether these claims are appropriate for relief in the first instance. Because, again, because the court determined that Martinez did not apply at all, it did not make any such determination. Counsel, could you address opposing counsel's reliance on the Nevada statutory scheme? Yes, Your Honor. I think it really just goes back to the fact that Martinez set forth a test. They could have set forth that as an aspect of the test, you know, looking at the type of post-conviction regime the state court had. It did not. It just said if claims have to be brought, if ineffective assistance of trial counsel claims have to be brought in first state post-conviction proceedings, then this is a way to overcome default. And that's the circumstance that exists in this case? Yes, Your Honor, absolutely. I don't think there's any question that Nevada requires that ineffective assistance of trial counsel claims cannot be brought in direct appeal. They must be brought in first post-conviction proceedings. And then the other point is that I just go back to Cooper v. Nevin, where a panel of this court held that even though the state petitioner had a route to overcome default that was exactly the same as the route in federal court, that did not stop the federal court from finding that procedural default could be overcome. And that case was prosecutorial misconduct. Here it's ineffective assistance of trial counsel, but I think the logic is the same. And if there are no further questions, Your Honor, we'll close with that. It appears not. Thank you. Thank you. Thank you to both counsel for your helpful arguments. The case is submitted for decision by the court. We are adjourned. All rise.
judges: RAWLINSON, LEE, MENDOZA